# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 11 C 2262 |
| MARCUS CORSON (19205-424), | ) | Judge Rebecca R. Pallmeyer |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Marcus Corson ("Corson") was convicted by a federal jury in August 2007 for conspiring with three other men to rob a drug stash house and sell the proceeds of the robbery. He was later sentenced to 135 months on each count to run concurrently. Corson has moved to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. He presents two grounds for relief: (1) ineffective assistance of counsel for failure to seek a severance; and (2) ineffective assistance of counsel for failure to pursue a claim of actual innocence. Neither of these arguments is facially compelling. A severance motion had no chance of success; Petitioner and his two co-Defendants were charged in one indictment because all three were involved in the same planned robbery, and there were no genuinely antagonistic defenses. And defense counsel did indeed argue that Petitioner was innocent of the charged offense. *See, e.g.,* Defendant Marcus Corson's Motion for Judgment of Acquittal, [139] in *United States v. Corson*, No. 06 CR 930. The government argues for dismissal of this petition, however, not on its merits but on timeliness grounds. Petitioner acknowledges that he filed this motion [1] after the filing period had lapsed, and, as such, it is technically time-barred. He contends, however, that extraordinary circumstances here support the equitable tolling of the limitations period. For the reasons explained here, the court declines to apply equitable tolling and denies Corson's § 2255 motion as untimely.

## FACTUAL BACKGROUND

On January 10, 2007, Movant Marcus Corson was indicted on two counts of conspiracy: (1) conspiracy to possess with intent to distribute five or more kilograms of cocaine; and (2) conspiracy to obstruct, delay, or affect commerce by means of robbery. 21 U.S.C. §§ 841(a)(1), 846; 18 U.S.C. § 1951. But, as the Seventh Circuit put it, "there's a twist": the plot was part of a government sting operation. *United States v. Corson*, 579 F.3d 804, 806 (7th Cir. 2009). In reality, two of Corson's purported co-conspirators were working for the government (one as a confidential informant, the other a federal agent), and neither the stash house that Corson conspired to rob nor the drugs that were supposedly inside it were real. Following a four-day trial, a jury convicted Corson on both counts on August 23, 2007, and he was subsequently sentenced by this court to 135 months on each count to run concurrently. *United States v. Corson*, No. 06 CR 930 (N.D. Ill. Aug. 23, 2007). Corson appealed, but the Seventh Circuit affirmed his conviction on August 27, 2009. *Corson*, 579 F.3d 804. On March 8, 2010, the Supreme Court denied Corson's petition for writ of *certiorari.*

Approximately three weeks later, on April 1, 2010, Heather Winslow (Corson's attorney throughout his trial and direct appeals) informed him by letter that his *certiorari* petition had been denied. (Letter from Winslow to Corson of 4/1/2010, Ex. A to Corson's Mem. in Support of Equitable Tolling, hereinafter "Movant's Mem.") In that correspondence, Winslow also counseled Corson that "[t]he only thing left to do at this point is to consider whether you want to file a 2255 petition. You have only one year to do that." (*Id.*) Although that letter is dated April 1, Winslow did not specify when exactly the one-year limitations period began to run, nor did she mention that the Supreme Court had issued its decision on March 8.

In the months that followed, Winslow and Corson remained in contact; but Movant's incarceration strained his available lines of communication. As a result, Corson's mother (Kathy Corson) and girlfriend (Dana Schroeder) often served as conduits between Corson and his

2

attorney. (*Id.*) The two women wrote numerous e-mails to Winslow from June 2010 through March 2011. (*See* Exs. D-K to Movant's Mem.) They also met with Winslow in person in July 2010 to discuss Movant's 2255 motion. At that meeting, Winslow learned that Corson planned to base his § 2255 motion on claims that Winslow's representation was constitutionally ineffective. Because of these claims, Winslow determined that she could no longer represent Corson in his collateral proceedings. (*Id.*) She nonetheless agreed to assist Corson in obtaining representation from another attorney, Matthew Madden, a former colleague of hers when both were employed at the Federal Defender's office.[1] (*Id.*) Corson offers no explanation of what happened with Madden, but the e-mail correspondence between Winslow, Ms. Corson, and Schroeder shows that Madden did not take Corson's case on: on March 17, 2011, Schroeder wrote to Winslow, "Since we have not heard anything from Matt on taking Marc's case and time is running out Marc is left with asking for a public defender." (E-mail from Schroeder to Winslow of 3/17/2011, Ex. I to Movant's Mem.) Corson remained unrepresented in this collateral proceeding until months after filing this motion.

Even after identifying the conflict of interest and telling Corson that she wouldn't participate in the preparation of his § 2255, Winslow continued to correspond with Movant's go-betweens through at least March 23, 2011. (*See* E-mail from Winslow to Kathy Corson of 3/23/11, Ex. K to Movant's Mem.) Ms. Corson or Schroeder initiated each e-mail exchange throughout this period, seeking Winslow's advice about either reaching Madden or preparing and filing Movant's 2255 motion. (*See* Exs. D-K to Movant's Mem.) Corson claims that by continuing to advise him through his surrogates, Winslow "lull[ed] him into a false sense of

---

[1] When Winslow was initially appointed to represent Movant, she was employed as an Assistant Federal Defender, but "at some point after the trial" she left to enter private practice. (Movant's Mem. at 2.) The court notes that Winslow's April 1, 2010 letter is on stationery for her personal office rather than the Office of the Federal Defender. (Letter from Winslow to Corson of 4/1/2010.)

security." (Movant's Reply [10] at 2.) Specifically, he "believed that either [Winslow] would continue to represent him or ensure that someone else from the Federal Defender's Office would represent him on his 2255 motion" until just before he hastily filed his petition in March 2011. (Movant's Mem. at 2.) In December 2010, however, Movant's mother e-mailed Winslow indicating that her son was planning to file his motion *pro se*. She wrote Winslow on December 16, asking the attorney to call her because she was "having a little bit of a problem starting the 2255." (E-mail from Kathy Corson to Winslow of 12/16/2010, Ex. F to Movant's Mem.)

At no point in any of her communications with Corson or his family did Winslow identify the precise deadline for Movant's 2255 motion. Corson assumed, however, that he had until April 1, 2011—one year to the day after Winslow's letter informed him of the 365-day limitations period. (Movant's Mem. at 2.) And, although Winslow never mentioned a specific date, her own conduct suggests that she too may have misunderstood the limitations period. In e-mails sent after March 8, 2011, Winslow referred to the 2255 deadline in the future tense when, in reality, the one-year period had already lapsed. For instance, on March 23, Winslow warned Ms. Corson that her son was "really short on time" to file his 2255 motion. (*See e.g.*, E-mail from Winslow to Schroeder of 3/23/2011, Ex. K to Movant's Mem.) Movant eventually filed his 2255 motion *pro se* on March 30, 2011,[2] two days before what he believed to be the statutory deadline for doing so.

Several months later, in August 2011, this court appointed counsel to represent Corson (Movant's Mem. at 2), and exactly one year after filing his 2255 petition, Corson filed, through counsel, a separate motion [4] asking the court to equitably toll the limitations period based on Winslow's conduct. The government responded [8], addressing only the tolling issue and asking the court to dismiss Corson's motion as untimely.

---

[2] Corson's 2255 motion was filed with this court on April 4, 2011; however, it is deemed filed on March 30, 2011, the date it was placed in the Bureau of Prisons mail system. *See Dole v. Chandler*, 438 F.3d 804 (7th Cir. 2006) (citing *Houston v. Lack*, 487 U.S. 266, 270-72 (1988)).

4

**DISCUSSION**

I.   **Limitations Period of Section 2255(f)**

A one-year period of limitation applies to motions made pursuant to 28 U.S.C. § 2255, starting on one of four dates. 28 U.S.C. § 2255(f). In this case, the parties agree, Corson was required to file no later than one year after March 8, 2010, the date when the Supreme Court denied Corson's petition for *certiorari*. (Movant's Mem. at 3; Gov't's Resp. [8] at 4 (citing *Robinson v. United States*, 416 F.3d 645, 646 (7th Cir. 2005) ("finality attaches for purposes of the one-year limitations period of § 2255[(f)(1)] when the Supreme Court affirms on the merits on direct review or denies certiorari[.]")).) The parties further agree that Corson filed his motion more than one year later, on March 30, 2011; and, as such, it is untimely. (Movant's Mem. at 3.)

II.   **Equitable Tolling**

Despite missing this statutory deadline, Corson suggests that, because he was "effectively abandoned" by his attorney, the court should reach the merits of his motion by deeming it timely under the doctrine of equitable tolling. (*Id.*) The government disagrees, arguing that the circumstances Corson alleges do not justify the invocation of this "extraordinary" remedy. (Gov't's Resp. at 5.)

Section 2255's statute of limitations is subject to equitable tolling. *Nolan v. United States*, 358 F.3d 480, 483 (7th Cir. 2004). Such tolling is rarely recognized, however; not long ago, the Seventh Circuit observed that it had "yet to identify a factual circumstance so extraordinary that it warrants equitable tolling." *Johnson v. Chandler*, 224 Fed. Appx. 515, 519 11 (7th Cir. 2007); *see also Broyles v. Roeckeman*, No. 12 C 7702, 2013 WL 1729428, *3 (N.D. Ill. Apr. 22, 2013) (quoting *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008) (regarding the analogous limitations period under 28 U.S.C. § 2244(d)).) A petitioner is entitled to equitable tolling only if he shows: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. *Holland v. Florida*,

560 U.S. 631, 649 (2010)[3] (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). While a petitioner need not demonstrate that he exercised "maximum feasible diligence" in pursuing his rights, he must at least show that he acted with "reasonable diligence." *Id.* at 653 (internal quotations omitted). "[G]arden variety" attorney negligence (*e.g.*, "a simple miscalculation that leads a lawyer to miss a filing deadline" or "be[ing] unaware of the date on which the limitations period expired") is insufficient to justify equitable tolling, *id.* at 651, 652, though more serious attorney misconduct may constitute an extraordinary circumstance sufficient to support tolling. *Obriecht v. Foster*, 727 F.3d 744, 749 (7th Cir. 2013). Two recent Supreme Court cases illustrate this distinction. In *Holland*, the Court found that Bradley Collins, the petitioner's attorney, had committed "far more serious instances of attorney misconduct" than mere negligence:

> To be sure, Collins failed to file Holland's petition on time and appears to have been unaware of the date on which the limitations period expired—two facts that, alone, might suggest simple negligence. But, in these circumstances, the record facts we have elucidated suggest that the failure amounted to more: Here, Collins failed to file Holland's federal petition on time despite Holland's many letters that repeatedly emphasized the importance of his doing so. Collins apparently did not do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules. Collins failed to inform Holland in a timely manner about the crucial fact that the Florida Supreme Court had decided his case, again despite Holland's many pleas for that information. And Collins failed to communicate with his client over a period of years, despite various pleas from Holland that Collins respond to his letters.

*Holland*, 560 U.S. at 652. The Court added that "these various failures violated fundamental canons of professional responsibility, which require attorneys to perform reasonably competent legal work, to communicate with their clients, to implement clients' reasonable requests, to keep their clients informed of key developments in their cases, and never to abandon a client." *Id.* at 652-53. Similarly, in *Maples*, the Court excused a death row inmate's procedural default due to

---

[3] "*Holland* deals with state prisoners' petitions under § 2254, but its conclusion is equally applicable to federal prisoners' petitions under § 2255." *Estremera v. United States*, 724 F.3d 773, 775 (7th Cir. 2013).

6

his "abandonment" by his attorney. *Maples v. Thomas*, 132 S. Ct. 912 (2012). In doing so, however, the Court again reaffirmed the "general rule" that attorney negligence alone does not warrant equitable tolling:

> A prisoner's postconviction attorney's negligence does not qualify as "cause," because the attorney is the prisoner's agent, and under "well-settled" agency law, the principal bears the risk of his agent's negligent conduct. Thus, a petitioner is bound by his attorney's failure to meet a filing deadline and cannot rely on that failure to establish cause.
>
> A markedly different situation arises, however, when an attorney abandons his client without notice, and thereby occasions the default. In such cases, the principal-agent relationship is severed and the attorney's acts or omissions cannot fairly be attributed to [the client]. Nor can the client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him.

*Id.* at 914-15 (internal citations omitted).

Corson argues that, like the petitioners in *Holland* and *Maples*, he diligently pursued his rights, but failed to file a timely 2255 motion only because of the "egregious" misconduct of his attorney. (Movant's Reply at 2.) Specifically, Movant points to his repeated contact with Winslow (via his mother and girlfriend) as evidence of his diligence; and he argues that three aspects of Winslow's behavior combined to create an "extraordinary circumstance" that prevented him from timely filing his motion: (1) Winslow failed to sever all ties with Corson after discovering a conflict of interest; (2) she apparently miscalculated the § 2255 limitations period; and (3) Winslow offered what turned out to be false assurances that she would find him new representation. (*Id.* at 2; Movant's Mem. at 8.) As Corson would have it, Winslow's actions amount to the same type of extreme ethical failures present in *Holland* and *Maples*. In the court's view, however, the remarkable errors made by the attorneys in *Holland* and *Maples* amply illustrate the significant differences between those cases and the one at hand. First, Corson pursued his rights far less diligently than either Holland or Maples: he never asked Winslow to file a 2255 motion on his behalf; he knew, as early as July 2010, that Winslow would not be preparing the 2255 motion for him; and, most troubling of all, he assumed, without

7

investigating, that that the one-year limitations period ran from the date of Winslow's letter breaking the news from the Supreme Court.  Second, although Winslow could have avoided any ethical ambiguity by completely withdrawing her representation once she learned of the possible conflict of interest here, her actions were nowhere near as ethically dubious or prejudicial as those of her counterparts in *Holland* and *Maples*.  Rather than silently abandoning her client, like the appointed attorneys in *Maples*, Winslow informed Corson that she could not assist with his 2255 motion when she learned of her conflict and, from that point on, only communicated with Movant and his surrogates when they sought her advice.  The other evidence that Corson offers to substantiate his "extraordinary circumstances" argument further undermines his contention that he diligently pursued his rights.  Corson argues that Winslow led him to believe that the filing deadline was April 1, 2011.  (Movant's Mem. at 6.)  Although Winslow's e-mails suggest that she did not know that the limitations period lapsed on March 8, 2011, Winslow in fact never identified a specific date as the 2255 deadline, let alone an incorrect one.  Further, while Movant claims that Winslow's references to Madden taking his case "lulled" him into a false sense of security, there is no indication that Madden ever spoke with Corson or his surrogates, and Corson's mother actually started to draft the petition in December 2010, four months prior to the deadline.  Although the lack of clarity regarding Madden's role was unfortunate, had Corson reasonably and diligently pursued his rights here, he would not have remained inactive and uninformed about his filing requirements amid such ambiguity and confusion.

In the end, Corson was not abandoned by his attorney, nor did Winslow ignore his pleas to file a § 2255 motion on his behalf.  Rather, Movant unfortunately relied on a faulty assumption about his filing deadline based on an ambiguous message from Winslow prior to her withdrawal as his attorney.  Although Winslow's conduct may not have been perfect, even Corson's version of events satisfies the court that any error on her part falls well below the misconduct present in the cases cited by Corson.  Had Corson truly been diligent in the pursuit of his rights under §

2255, his former attorney's conduct would not have prevented him from timely filing his motion before this court. Accordingly, equitable tolling is not appropriate in this instance, and Corson's motion [1] is time barred.

## **CONCLUSION**

For the foregoing reasons, Corson's motion for equitable tolling [4] is denied and his petition for relief pursuant to 28 U.S.C. § 2255 [1] is dismissed.

ENTER:

Dated: April 16, 2014

United States District Judge